IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSEPH GOLAS,                          §
                                       §
            Plaintiff,                 §
                                       §
V.                                     §          No. 3:13-cv-4110-BN
                                       §
CAROLYN W. COLVIN,                     §
Acting Commissioner of Social Security, §
                                       §
            Defendant.                 §

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Golas seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

### Background

Plaintiff alleges that he is disabled due to a variety of ailments, including degenerative disc disease and herniation of the cervical spine with stenosis, left shoulder radiculopathy, neuritis, neuralgia, radiculitis, lateral epicondylitis, hypertension, major depressive disorder, generalized anxiety disorder, and obsessive compulsive disorder. *See* Dkt. No. 16 at 2. After his application for disability benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *See* Administrative Record [Dkt. No. 11 ("Tr.")] at 70-74, 78-81, 82-83. That hearing was held on March 9, 2012. *See id.* at 13, 91. At the time of the hearing, Plaintiff was 57 years old. *See id.* at 34. He is a high school graduate, *see id.* at 35, and has past work experience as a director of operations, customer service

representative supervisor, and business manager, *see id.* at 24, 35-38, 64. Plaintiff has not engaged in substantial gainful activity since April 11, 2008. *See id.* at 15, 34.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 26. Although the medical evidence established that Plaintiff suffered from a ruptured disk, hypertension, major depression, and generalized anxiety disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 16. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of medium work but could not return to his past relevant employment. *See id.* at 17, 24. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a laundry worker, warehouse worker, or dry cleaner helper – jobs that exist in significant numbers in the national economy. *See id.* at 25. Given his age, education, and exertional capacity for medium work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 24, 26.

Plaintiff appealed that decision to the Appeals Council. *See id.* at 7-8. The Council affirmed. *See id.* at 1-5.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 2. Plaintiff challenges the hearing decision on four general grounds: (1) substantial evidence does not support the finding that he can perform the jobs identified by the vocational expert; (2) the ALJ failed to properly consider all of Plaintiff's severe impairments; (3) the

assessment of his residual functional capacity is not supported by substantial evidence; and (4) the ALJ failed to weigh all of the medical opinions in evidence.

The Court determines that the hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to

engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff,

5

*see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – whether the ALJ properly weighed all medical opinions in evidence.[1] Because the ALJ committed other errors, as well, those errors will also be addressed so that the ALJ may remedy them on remand.

I.    <u>The ALJ's failure to weigh all of the medical opinions was prejudicial.</u>

In his fourth issue, Plaintiff argues that "[t]he ALJ failed to properly weigh all of the medical opinions in evidence." Dkt. No. 16 at 23. Although Plaintiff's issue is asserted in general terms, he only specifically addresses the opinion of Kristi Compton, Ph. D. *See* Tr. at 18, 352-57.

Dr. Compton performed a consultative psychological examination of Plaintiff on December 6, 2010 and opined that, "due to his current health issues and lack of energy, the client would likely perform in a slow persistence and pace." *Id.* at 352. Dr. Compton

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

diagnosed Plaintiff with major depressive disorder, recurrent, severe; generalized anxiety disorder; panic attack disorder without agoraphobia; and obsessive compulsive disorder. *See id.*

The ALJ discussed Dr. Compton's evaluation and diagnosis and specifically noted that "Dr. Compton felt that the claimant would likely perform persistence and pace in a slow manner." *See id.* at 18.

The ALJ also stated that he "reviewed, considered, evaluated, analyzed, and weighed all opinion evidence, conflicting or otherwise, and regardless of its nature and source (consultative, treating, or State medical experts), in accordance with the requirements of 20 C.F.R. 404.1527, 416.927, and SSRs 96-2p, 96-5p, and 96-6p." *Id.* at 22. The ALJ explained the weight that he gave to the opinions of Pamela VanPelt-Tess, Ph. D., Plaintiff's treating physician, and State Agency medical consultants ("SAMC") Matthew Snapp, Ph. D. and Rena Popma, Psy.D., *see id.* at 18-19, whose findings the ALJ adopted for his residual function capacity ("RFC") determination, *see* 17, 374, 518-20. But the ALJ did not explain the weight that he gave to Dr. Compton's opinion.

State agency medical or psychological consultants such as Dr. Compton are considered experts in the Social Security disability program, and their opinions may be entitled to great weight if they are supported by the evidence. *See Rawls v. Astrue*, No. 4:10-cv-71-BJ, 2011 WL 725279, at *11 (N.D. Tex. Mar. 2, 2011). Although an ALJ is solely responsible for assessing a claimant's RFC, he must consider and evaluate any

opinion by a SAMC regarding the claimant's RFC. *See* SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996). Specifically, "RFC assessments by [SAMCs] ... are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment[s]" and "are to be evaluated considering all the factors ... for considering opinion evidence" outlined in 20 C.F.R. § 404.1527(c). *Id.* The ALJ is not required to expressly discuss each finding by a SAMC or discuss each factor listed in 20 C.F.R. § 404.1527(c), however, because such a detailed analysis applies only to the ALJ's rejection of a treating sources' uncontradicted opinion. *See Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir. 2000). The ALJ also "must explain the weight given to these opinions in [his] decision[]." SSR 96-6p, 1996 WL 374180, at *4.

The ALJ discussed Dr. Compton's evaluation, including her opinion concerning persistence and pace, in detail, but the ALJ did not expressly explain the weight he gave to that opinion. *See* Tr. at 18. This was error.

The Court therefore must consider whether the ALJ's failure to properly weigh Dr. Compton's opinion is harmless. *See Webb v. Astrue*, No. 4:08-cv-747-Y, 2010 WL 1644898, at *11 (N.D. Tex. Mar. 2. 2010) (applying harmless error analysis to the ALJ's failure to give weight to an SAMC's opinion). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *See Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Plaintiff

8

argues that he was harmed because the RFC did not include limitations concerning persistence and pace; because the jobs of laundry worker, warehouse worker, and dry cleaner helper that the ALJ determined Plaintiff could perform require persistence and pace; and because it is unknown whether an individual could perform those jobs at a "slow persistence and pace." Dkt. No. 16 at 24-25.

Dr. Popma determined that Plaintiff had moderate limitations in concentration and persistence and concluded that Plaintiff could "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, [and] respond appropriately to changes in routine work setting." Tr. at 518-20. Dr. Snapp concluded that Plaintiff could "understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact [with] others, and respond to changes." *Id.* at 374.

The ALJ based his hypothetical to the vocational expert ("VE") at the hearing and subsequently his RFC determination on these RFC findings by Drs. Popma and Snapp. But those findings do not take "slow persistence and pace" into account, and the ALJ does not explain how he weighed the contradictory findings of Dr. Compton on this issue. There is no evidence in the record as to whether the jobs identified by the VE could be performed at "slow persistence and pace," and Plaintiff suffered prejudice because the ALJ concluded that Plaintiff could perform those jobs, which led to a finding of not disabled. *See id.* at 2426.

Accordingly, because it is conceivable that a different administrative conclusion would have been reached if the ALJ had properly weighed Dr. Compton's opinion, remand is required. *See Webb*, 2010 WL 1644989, at *11; *Bornette*, 466 F. Supp. 2d at 816.

II.   **The ALJ's failure to ask about a conflict between the VE's testimony and the DOT is not prejudicial.**

In his first issue, Plaintiff challenges the ALJ's finding that he is not disabled because he has the RFC to perform jobs that exist in significant numbers in the national economy. Plaintiff asserts that this finding was erroneous because he did not retain the reasoning development to perform the jobs identified by the VE and because he could not have performed the jobs identified by the VE with the RFC found by the ALJ. *See* Dkt. No. 16 at 10-15.

At the administrative hearing, the VE testified that Plaintiff was unable to perform any past relevant work. *See* Tr. at 65. The ALJ then asked the VE if there were jobs that could be performed by a hypothetical individual who is limited to work at the medium exertional level and who

> is able to learn, understand, remember, and to carry out, just keep it simple one, two step kind of instructions and tasks, that can use judgment in making simple work related decisions, that can respond and relate appropriately to other[s] such as supervisors and coworkers, but let's keep him out of the public, so any contact would be very, none or minimal, that can maintain attention and concentration for at least two hour intervals, and can adapt and deal with simple changes in work settings and environments, and that any jobs available are considered []low stress.

*Id.* at 64-65. The VE answered that such an individual could work as a laundry worker, warehouse worker, or dry cleaner helper. *See id.* at 65-66. The ALJ did not ask the VE if her testimony concerning the hypothetical person's ability to perform these jobs conflicted with information provided in the *Dictionary of Occupational Titles* ("DOT"). *See id.*

> In his written decision, the ALJ found that Plaintiff retained the RFC
>
> to perform medium work (lift/carry 50 pounds occasionally and 25 pounds frequently). Claimant can sit, stand and/or walk for about six hours in an eight-hour workday. Claimant is not limited in pushing or pulling (including the operation of foot and/or hand controls) with the upper and lower extremities. Claimant has no postural, manipulative, visual, communicative, or environmental limitations. From the mental standpoint, claimant retains the ability to learn, understand, remember, and carry out only simple 1-2 steps instructions and tasks; use judgment in making simple work-related decisions; respond and relate appropriately to others, such as co-workers and supervisors, but not the public; maintain attention and concentration for at least two hour intervals; and, adapt to and deal with simple changes in work settings and environments.

*Id.* at 17. The ALJ also found that the VE's testimony was consistent with the information found in the *Dictionary of Occupational Titles* (the "DOT") and its companion publication, *The Selected Characteristics of Occupations*, and the ALJ therefore accepted the VE's testimony in accordance with SSR 00-4p. *See id.* at 25. Based on the ALJ's RFC finding and the VE's testimony, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, specifically those of laundry worker, warehouse worker, or dry cleaner helper. *See id.* at 17, 24-25, 65-66.

Plaintiff first argues that the ALJ erred by relying on the VE's testimony that a hypothetical person who could carry out only simple one- or two-step instructions could perform the jobs of laundry worker, warehouse worker, or dry cleaner helper because that testimony conflicts with information provided in the DOT. The jobs of laundry worker, warehouse worker, or dry cleaner helper require a reasoning development level of 2. *See* DICTIONARY OF OCCUPATIONAL TITLES § 361.684-014 (laundry worker), § 922.687-058 (warehouse worker), § 362.686-014 (dry cleaner helper) (Rev. 4th ed. 1991 at 260, 262, 947) (available at www.westlaw.com (database DICOT)). But Plaintiff contends that the VE's testimony was based on a hypothetical person with a reasoning developmental level of 1.*See id.* app. C at 1011.

The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *Id.* at xv. The DOT – along with a companion volume, *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO")[2] – contain descriptions of the requirements for thousands of jobs in the national economy. Every job description in the DOT includes a "general educational development" or "GED" designation describing the mental abilities that an employee needs to complete that job. GED "embraces those aspects of education (formal and informal) which are required of the worker." *Id.* at 1009. The GED scale is comprised of six levels designating the "reasoning development," "mathematical development," and "language development"

---

[2] *See* www.westlaw.com (database SCODICOT).

needed to perform jobs at that level. *See id.* at 1009-11. The DOT specifies that jobs with GED reasoning development level 1 require the ability to apply commonsense understanding to carry out <u>simple one- or two-step instructions</u> and deal with standardized situations with occasional or no variables in or from these situations encountered on the job. *See id.* app. C at 1011. Jobs with reasoning development level 2 require the ability to apply commonsense understanding to carry out <u>detailed but uninvolved written or oral instructions</u> and deal with problems involving a few concrete variables in or from standardized situations. *See id.*

Under the Social Security Rulings, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. *See* SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). As part of the ALJ's duty to fully develop the record of the hearing, the ALJ "will inquire, on the record, as to whether or not there is such consistency." *Id.* at *5. When there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination of disability. *See id.* Neither the DOT nor the VE evidence automatically "trumps" the other when there is a conflict. *Id.* A conflict must be resolved by determining whether the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *See id.* The ALJ must explain in the determination or decision how any conflict that has been identified was resolved. *See id.* at *1.

In the Fifth Circuit, an ALJ may, in appropriate cases, give greater weight to expert vocational testimony than to findings in the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). When a "direct and obvious" conflict exists between the VE's testimony and the DOT and the ALJ fails to explain or resolve the conflict, the testimony is "so lessened that reversal and remand for lack of substantial evidence usually follows." *Id.*; *see also Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp. 2d 607, 613 (E. D. Tex. 2009). But, when the conflict is implied or indirect, and it did not undergo adversarial cross-examination at the hearing, the ALJ may rely on the VE's testimony without resolving the later-proposed conflict so long as the record reflects an adequate basis for doing so. *See Gaspard*, 609 F. Supp. 2d at 613 (citing *Carey*, 230 F.3d at 146).

A direct conflict may arise when the VE's testimony regarding the exertional or skill level of a particular job is facially different than that indicated in the DOT or when the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT. *See Carey*, 230 F.3d at 145. Conversely, all kinds of implied conflicts and exceptions occur under various unique circumstances when VEs are called on to testify as to an individual claimant's capabilities. *See id.* at 146-47. Because the DOT cannot satisfactorily address every such situation, claimants are not permitted to scan the record for implied or unexplained conflicts and then present the conflict as reversible error. *See id.*

14

Here, the ALJ took testimony from the VE as to whether certain job requirements were compatible with Plaintiff's various limitations but did not ask whether the VE's analysis conflicted with the DOT. S*ee* Tr. at 63-67. This omission led to a complete failure to comply with SSR 00-4p, which unambiguously places the burden of making necessary inquiries and providing a reasonable explanation for apparent conflicts on the ALJ, not the claimant. *See* SSR 00-4p, 2000 WL 1898704, at *4 ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."); *see also Romine v. Barnhart*, 454 F. Supp. 2d 623, 630 (E.D. Tex. 2006).

An ALJ's violation of a ruling is generally reversible legal error, provided that the error results in prejudice. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam). The United States Court of Appeals for the Fifth Circuit has held that, even when the ALJ fails to discover and address conflicts between the testimony of a VE and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the alleged error. *See McMillian v. Colvin*, No. 4:12-cv-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan. 6, 2014) (citing *DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006)). A claimant establishes the requisite prejudice by showing that, "'if the ALJ had fully developed the record,'" additional evidence would have been produced that "'might have led to a different decision.'" *Id.* (quoting *Newton*, 209 F.3d at 458). In a similar case, the United States District Court for the Eastern District of Texas

15

held that "prejudice was self-evident" when the ALJ did not perceive that any conflict existed and did not ask about any potential conflict because the VE might change his mind when presented with the conflict or the ALJ might not be satisfied with the VE's attempt to dismiss the conflict. *See Romine*, 454 F. Supp. 2d at 628..

In this case, there was a direct conflict between the VE's testimony and the DOT. But Plaintiff was not prejudiced by the ALJ's failure to comply with SSR 00-4p. Courts have repeatedly found that jobs with a GED reasoning development level 2 are consistent with limitations to simple instructions and routine tasks. *See, e.g.*, *Skiles v. Colvin*, No. 4:12-cv-418-Y, 2013 WL 3486921, at *12 n.22 (N.D. Tex. July 11, 2013) (job that requires reasoning development level of 2 not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks); *Davis v. Astrue*, No. SAG-11-2279, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013) (reasoning level 2 consistent with a restriction to simple, routine tasks); *Castaneda v. Astrue*, No. EDCV 11-5080JEM, 2012 WL 528326, at *8 (C.D. Cal. Feb. 15, 2012) (same); *Lavendar v. Astrue*, No. 3:10-cv-5785-RJB-KLS, 2011 WL 3664892, at *12 (W.D. Wash. Jul. 28, 2011), *rec. adopted*, 2011 WL 3665002 (W.D. Wash. Aug. 19, 2011) (same)*; Gaspard*, 609 F. Supp. 2d at 617 n.22 (same) (citing cases); *Veal v. Astrue*, 618 F. Supp. 2d 600, 613 & n.32 (E.D. Tex. May 21, 2009) (same); *cf. Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no inconsistency between VE's testimony and the DOT when the VE identified a job that required a reasoning level of 3 in response to a hypothetical that described an individual who was limited to following "simple, concrete

instructions"). On remand, however, the ALJ should comply with the requirement to ask about a conflict and explain how he resolved the conflict before relying on a VE's testimony.

Plaintiff next argues that he could not have performed the jobs identified by the VE with the ALJ's RFC. The hypothetical posed to the VE contained the limitation of "any jobs available are low stress," but the RFC did not limit Plaintiff to low stress jobs. Procedural perfection in administrative hearings is not required, and the court will not vacate a judgment unless the substantial rights of a party have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).

Plaintiff asserts that he could not perform the job of laundry worker because not only is it not low stress, but also according to the Department of Labor's *Revised Handbook for Analyzing Jobs* ("RHAJ"), it "[i]nvolves some latitude for judgment with regard to precision attained and selecting appropriate tools, object[s], or material[s]," which Plaintiff claims is contrary to the RFC that he could only use judgment in making simple work-related decisions. *See* U.S. DEP'T OF LABOR, REVISED HANDBOOK FOR ANALYZING JOBS (1991), (available at http://skilltran.com/rhaj/chapter3.htm). But Plaintiff has not shown that the Commissioner takes administrative notice of the RHAJ information or otherwise embraces it as authoritative. *See Gaspard*, 609 F. Supp. 2d at 613.

And Plaintiff asserts that he could not perform the job of warehouse worker and dry cleaner helper because they require interaction with the public, which the ALJ included in his hypothetical to the VE, but not in the RFC. But the DOT descriptions

for both jobs indicate that working with people, such as taking instructions-helping, is characterized as not significant. *See* DOT § 362.686-014, § 922.687-058; *Goddard v. Colvin*, No. 13-cv-190-FHM, 2014 WL 800508, at *5 (N.D. Okla. Feb. 28, 2014) (finding no inconsistency between DOT and RFT when working with people not significant). Although the ALJ's RFC was not procedurally perfect, and the ALJ should have asked whether the VE's testimony was in conflict with the DOT, Plaintiff has not shown that he could not have performed the jobs identified by the VE according to the RFC determined by the ALJ.

III.   <u>The ALJ did not fail to consider all of Plaintiff's severe impairments.</u>

In his second issue, Plaintiff contends that the ALJ failed to consider all of Plaintiff's severe impairments. Specifically, Plaintiff argues that the ALJ's failure to find that his left shoulder radiculopathy (also referred to as neuritis, neuralgia, radiculitis and lateral epicondylitis) and obsessive compulsive disorder were severe impairments was an error of law and not based on the record as a whole. *See* Dkt. No. 16 at 16-20. Relying on *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), Plaintiff asserts that, because the ALJ did not make findings as to whether Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder were severe, "it must be assumed the impairments were by inference considered non-severe." Dkt. No. 16 at 16-17.

In *Stone*, the Fifth Circuit, concerned that the Commissioner had been applying an incorrect standard to the severity requirement when determining impairments, held that

18

> we will in the future assume that the ALJ and Appeals Council have
> applied an incorrect standard to the severity requirement unless the
> correct standard is set forth by reference to this opinion or another of the
> same effect, or by an express statement that the construction we give to
> 20 C.F.R. § 1520(c) (1984) is used. Unless the correct standard is used,
> the claim must be remanded to the Secretary for reconsideration.

752 F.2d at 1106. The *Stone* standard provides that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

Here, the ALJ cited to the *Stone* decision, stating that, "[a]n impairment or combination of impairments is 'not severe' only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Tr. at 14. Plaintiff does not take issue with the ALJ's statement of the severity standard, and, in any case, the ALJ's recitation of the *Stone* standard is accurate. *See Stone*, 752 F.2d at 1101. The ALJ determined that Plaintiff has severe impairments, including ruptured disk, hypertension, major depression, and generalized anxiety disorder. *See* Tr. at 16. But the ALJ did not discuss Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder at step two of his analysis.

Plaintiff contends that, because the ALJ did not consider whether Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder were severe impairments at step two of the sequential analysis, "the remainder of the ALJ's findings of fact were also tainted from the error." Dkt. No. 16 at 17. But this is not the law. Remand is not

warranted when, even where the ALJ did not explicitly determine the severity of certain impairments, the ALJ proceeded to later steps of the analysis. *See Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (declining to remand where "case did not turn on a finding that [plaintiff's] impairments were not severe at step two"); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays*, 837 F.2d at 1365 ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

Plaintiff testified at the hearing that his primary physical problem was with his left arm. *See* Tr. at 52. He was treated for left elbow pain by Donald Bernstein, D.O., in December 2008, July 2010, and August 2010. *See id.* at 436-37, 392, 394-95. In December 2008, Dr. Bernstein noted that Plaintiff's left elbow was very tender, even though he had normal muscle mass, muscle tone, and coordination, and he treated Plaintiff with an injection in the joint. *See id.* at 437. In July 2010, Plaintiff's right upper and lower arm were painful, and his grasp was weak. *See id.* at 395-96. Dr. Bernstein ordered an MRI. *See id.* at 396. In August 2010, Plaintiff complained of left arm numbness. *See id.* at 393. Plaintiff had an MRI on August 25, 2010, *see id.* at 536-37, and the ALJ noted the MRI showed multilevel degenerative changes and disk disease of the cervical spine, *see id.* at 19. On both August 30, 2010, and November 9, 2011, Dr. Bernstein noted spasm of Plaintiff's cervical and upper thoracic spine. *See*

*id.* at 392, 527. On November 9, 2011, Plaintiff complained of loss of sensation in his left arm and continued radicular pain to the left shoulder and upper arm. *See id.* at 526-27. Throughout his treatment, Dr. Bernstein diagnosed Plaintiff with neuralgia, neuritis, and radiculitis, *see id.* at 392, 394, 396, 527, and prescribed prednisone, *see id.* 392, 395, 527, which Plaintiff testified helped to a certain degree, *see id.* at 53.

Plaintiff was also examined by Lige Rushing, M.D., on February 7, 2011. *See id.* at 377-379. Dr. Rushing found that Plaintiff had normal muscular strength, grip strength, and range of motion and opined that Plaintiff's "ability to lift, push, pull, stand, carry, move about, hear, sit and speak is not substantially impaired," *id.* at 378-79, and the ALJ refers to Dr. Rushing's opinion, *see id.* at 19.

Plaintiff was diagnosed with obsessive compulsive disorder by two physicians, and the ALJ discussed both doctors' reports in his written decision. *See id.* at 18. Kristi Compton, Ph. D., examined Plaintiff on December 6, 2010. *See id.* at 352-356. Plaintiff described becoming obsessed when things were not done perfectly and he experienced tension, and Dr. Compton's axis I diagnoses included obsessive compulsive disorder. *See id.*

Pamela VanPelt-Tess, Ph. D., who had been treating Plaintiff in individual psychotherapy since August 2009, wrote two narrative reports, and in both she described Plaintiff as suffering from obsessive compulsive disorder as well as severe anxiety and depression. *See id.* at 495, 535. Dr. VanPelt-Tess recommended that Plaintiff not return to a stressful job. *See id.* The ALJ pointed out that Dr. VanPelt-

Tess did not include any progress or treatment notes with her letters, did not cite any objective tests that she performed on Plaintiff and their results, or state what treatment she gave Plaintiff and the results. *See id.* at 18. As a result, the ALJ determined that Dr. VanPelt-Tess did not provide a sufficient nexus to a medically determinable impairment reasonably capable of producing symptoms and limitations. *See Id.* at 18-19.

The ALJ accorded greater weight to the State Agency medical experts who reviewed the evidence, including Dr. VanPelt-Tess's reports. *See id.* at 19, 23. They determined that Plaintiff could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in the work setting." *Id.* at 520. The ALJ limited Plaintiff to simple one- to two-step work requiring only simple judgment and incorporated the requirement that any jobs identified by low stress in his hypothetical to the VE. *See id.* at 65.

The record reflects that the ALJ properly considered and included limitations concerning Plaintiff's obsessive compulsive disorder. As such, the ALJ's failure to expressly deem Plaintiff's obsessive compulsive disorder as a "severe impairment" does not require remand. *See Herrera*, 406 F. App'x at 903; *Adams*, 833 F.2d at 512.

In any event, even if the ALJ's failure to expressly determine whether or not Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder were severe could be considered error, the Fifth Circuit has recently made clear that harmless error

analysis applies to "any error by the ALJ in not following the procedures set out in *Stone*" and that remand is not warranted where "substantial evidence supports the finding of the non-severity." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (remand not required where ALJ's decision supported by substantial evidence); *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment). As such, even if the ALJ's failure to make a finding as to the severity of Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder was erroneous, the error is harmless. "[P]rocedural perfection is not required unless it affects the substantial rights of a party." *Taylor*, 706 F.3d at 603. In this case, had the ALJ expressly found that Plaintiff's left shoulder radiculopathy and obsessive compulsive disorder were not severe, on the record in this case, substantial evidence would support that finding of non-severity under the *Stone* standard. *See Taylor*, 706 F.3d at 603.

IV.    The ALJ's reference to an incorrect standard of review is not prejudicial.

In his third issue, Plaintiff asserts that the ALJ's RFC analysis was erroneous because the ALJ relied on the State Agency medical experts' opinions and because Plaintiff's August 25, 2011 MRI scans were not part of the record when the State Agency medical experts reviewed the record. *See* Dkt. No. 16 at 20-23. Plaintiff also argues that the ALJ used an incorrect preponderance-of-the-evidence standard when he found Plaintiff's subjective allegations not credible. *See id.* at 22.

23

In assessing the claimant's RFC, the ALJ should consider all medical evidence as well as other evidence provided by the claimant. *See* 20 C.F.R. § 404.1545(a) (3). The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered. *See* SSR 96-8p, 1996 WL 374184, at *3-*5. In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making her decision, but the Social Security Rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent that the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that the ALJ did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In his RFC analysis, the ALJ determined that Plaintiff's "allegations of severe and disabling impairment related symptoms and other subjective complaints" were not credible because they were "unsupported by the preponderance of the objective medi[c]al findings." Tr. at 22. Plaintiff contends that the ALJ improperly adopted the State Agency medical experts' opinions and dismissed the significance of the August

25, 2010 MRI of his cervical spine because the MRI was not included in the record when the State Agency medical experts reviewed the record and the severity of the MRI results indicate Plaintiff could not perform medium range work. *See* Dkt. No. 16 at 20-23.

But the State Agency medical experts reviewed Dr. Rushing's report, and Dr. Rushing had reviewed the MRI and opined that Plaintiff's "ability to lift, push, pull, stand, carry, move about, see, hear, sit and speak is not substantially impaired." Tr. at 19-24, 379. Thus, Plaintiff's allegation that the MRI had not been reviewed by a medical doctor is unfounded, *see* Dkt. No. 16 at 21, and the ALJ was not required to arrange for an outside consultative examination to consider additional evidence, *see Ripley,* 67 F.3d at 557-58.

The ALJ did err in referring to the preponderance-of-the-evidence standard of review instead of the substantial evidence standard in his evaluation of the credibility of Plaintiff's subjective complaints. *See* Tr. at 22; *Ripley*, 67 F.3d at 555. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Aragon v.* Astrue, 322 F. App'x 410, 412 (5th Cir. 2009) (*citing Richardson*, 402 U.S. at 401). But that error was not prejudicial because the ALJ's discussion of the reasons for finding Plaintiff's subjective complaints and allegations not credible meets the reasonableness test for substantial evidence review. *See Richardson*, 402 U.S. at 401. And "[i]t is within the ALJ's discretion to determine the disabling nature of a

claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

In a footnote, Plaintiff argues that the ALJ failed to properly address Plaintiff's credibility because the ALJ relied on "boilerplate language" and because the credibility finding was insufficiently specific. *See* Dkt. No. 16 at 23 n.6; Tr. at 22. In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

> (1) the individual's daily activities;
>
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3) factors that precipitate and aggravate the symptoms;
>
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
>
> (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). But "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011) (internal quotation marks omitted).

26

The ALJ may not have mechanically mentioned each of the factors, but it is evident that he considered many of them. He discussed Plaintiff's daily activities, *see* Tr. at 20, and the frequency, intensity and duration of Plaintiff's pain and symptoms, *see id.* at 18-20, among other factors. And the ALJ discussed the conclusions drawn by each physician, treating or otherwise, and – with the exception of Dr. Compton – why and to what extent the physicians' notes and records did, or did not, support Plaintiff's claims. *See id.* Plaintiff contends that the ALJ relied on two-and-a-half pages of boilerplate in making the credibility determination and cites to text on pages 20-22 of the Transcript, but Plaintiff ignores the preceding two-and-a-half pages in which the ALJ discusses the evidence on which the credibility determination is based, *see id.* at 18-22, and that evidence is sufficiently specific.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: June 10, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE